[No. 23866.   Department One.   October 25, 1932.]

CONDE METCALF, *Appellant*, v. MUD BAY LOGGING
COMPANY, *Respondent*.[1]

*E. D. Germain* and *W. H. Sibbald,* for appellant.

*Thomas L. O'Leary* and *Hayden, Metzger & Blair,*
for respondent.

HOLCOMB, J.—This action was brought to recover for
personal injuries suffered by appellant and for dam-
ages to his automobile, resulting from a collision be-
tween it and the gasoline speeder of respondent, oper-
ated on its railway, which occurred where the rail-
way of respondent crosses the Shelton highway about
four miles west of Olympia, at about seven o'clock in
the evening on October 20, 1928.

[1]Reported in 15 P. (2d) 278.

After trial to a jury and a verdict in favor of appellant for the total sum of $6,250, personal injuries and property damages, respondent moved for a judgment notwithstanding the verdict and, in the alternative, for a new trial. The court granted respondent's motion for judgment n. o. v., and in the alternative, in case the order granting that motion should be reversed, vacated or set aside, then, in that event, granted the motion of respondent for a new trial.

Appellant alleged and introduced testimony tending to prove that, on the date and at the time alleged, he was driving his Chrysler sedan easterly on the highway at about twenty-five miles an hour, and was just entering upon the rails of respondent's railway track crossing the highway when a gasoline speeder, owned and operated by respondent, traveling northerly on its tracks at a high and dangerous rate of speed, without lights, whistle, or other signal or warning device whatsoever, disregarding his presence on the highway, carelessly and negligently collided with the auto of appellant; that the accident was due to and proximately caused by the negligence of the agents and servants of respondent, in operating the speeder at an excessive rate of speed and in failing to bring the speeder to a stop before crossing the arterial highway, in the failure of respondent to have the speeder equipped with a horn or gong, or proper lights, the failure to display proper lights, and the failure of the agents of respondent to observe appellant's car as it approached, and so regulate the speed of the speeder to allow appellant to pass while running the speeder after dark without warning or signals; the injuries of appellant to his person and his automobile were then alleged in detail.

By answer, respondent admitted the ownership and operation of the speeder, the collision, that some injuries were sustained including damages to the car,

denied the other allegations of the complaint, and further affirmatively alleged that the collision was caused by the negligence of appellant. The affirmative matter was denied by reply.

Appellant testified, among other things, that he was driving his car, with a companion, on the night of the accident, at about twenty-five to thirty miles an hour as he approached the crossing; that, about three hundred feet and again, his last look, when about one hundred fifty feet before he came to the crossing, he looked to both right and left and listened, recalling the presence of the railway crossing, and could see or hear no train; that there was a clear and unobstructed view of the track to the right of the highway for a distance of about one-quarter to one-half a mile for three hundred feet or more before he came to the crossing; that he passed another car, a Studebaker sedan, just before he came to the crossing, which was traveling very slowly, and after passing it, appellant swung over to the right side of the pavement; that, as he came to the crossing and when about ten feet from it, the speeder suddenly crossed on to the pavement just ahead of him; and that he tried to stop by applying the brakes and swerving to the right, but the collision took place. Appellant said his head lights were both burning. He had no means of estimating the speed of the speeder, but he estimated his own speed at between twenty-five and thirty miles an hour. The night was dark, but clear. His car never crossed the tracks.

The speeder was a large car, capable of carrying forty-two men comfortably. Although appellant and his companion testified that they looked to the left and to the right, the direction the speeder was coming from, and heard no whistle or horn, and saw no lights on the speeder, it was overwhelmingly proven by disinterested persons that the light on the rear end of the

speeder, as the speeder was headed, was burning brightly. There were also lights in the interior of the speeder, called dome lights, which were burning at all times, and both ends of the speeder looked exactly alike. Appellant does not now urge that the interior lights and the rear light may not have been burning.

■ Conceding the absence of apparatus for the sounding of signals, such as whistles, bells and horns, as is required by law in such case (Rem. Comp. Stat., § 2528; *Sanderson v. Hartford Eastern Railway Co.*, 159 Wash. 472, 294 Pac. 241; *Haaga v. Saginaw Logging Co.*, 165 Wash. 367, 5 P. (2d) 505), and that there was sufficient evidence to go to the jury as to the excessive speed of the speeder, all of which would constitute sufficient evidence of the negligence of respondent for the jury to consider, appellant was nevertheless guilty of contributory negligence which bars his recovery, as a matter of law.

He testified that he was quite familiar with the situation at this crossing, and had been traveling over the same route going to and from some work at Shelton, for three days prior to the accident. It is not denied that, at least, the interior lights and the rear light of the speeder were glaringly visible for a great distance from the railway track, even after the wreck. This situation alone renders appellant guilty of contributory negligence proximately causing the accident; and this case cannot be distinguished in principle from cases where pedestrians brought about their own injuries by not using the proper care in passing in front of moving vehicles. *Helliesen v. Seattle Electric Co.*, 56 Wash. 278, 105 Pac. 458; *Fluhart v. Seattle Electric Co.*, 65 Wash. 291, 118 Pac. 51; *Silverstein v. Adams*, 134 Wash. 430, 235 Pac. 784.

■ Furthermore, appellant was guilty of negli-

gence *per se* in violating a positive statute governing automobiles approaching a railway grade-crossing.

Rem. 1927 Sup., § 6350, prescribes:

"Drivers of all other motor vehicles [except those carrying passengers for hire] shall at the point of passing an advance railroad crossing sign, reduce the speed of the vehicle until the rate of speed at a point fifty (50) feet from the crossing shall not exceed twelve (12) miles per hour."

This court has generally held that the violation of a positive statute by an injured party which contributes to his injury, except in exceptional cases where there was some emergency, will be held, as a matter of law, to be the proximate cause of such injuries, barring recovery. *Twedt v. Seattle Taxicab Co.,* 121 Wash. 562, 210 Pac. 20; *Benson v. Anderson,* 129 Wash. 19, 223 Pac. 1063; *Linville Brothers v. Bliesner,* 133 Wash. 677, 234 Pac. 1019; *Millspaugh v. Alert Transfer & Storage Co.,* 145 Wash. 111, 259 Pac. 22; *Keller v. Breneman,* 153 Wash. 208, 279 Pac. 588, 67 A. L. R. 92; *Price v. Gabel,* 162 Wash. 275, 298 Pac. 444; *Walters v. Knox,* 165 Wash. 424, 5 P. (2d) 780.

The judgment of the trial court was correct, and is affirmed.

TOLMAN, C. J., MITCHELL, PARKER, and MILLARD, JJ., concur.